UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN STOUFFER, ET AL.,              )
                                    )
        Plaintiffs,                 )
                                    )     CIVIL ACTION NO.
VS.                                 )
                                    )     3:18-CV-0591-G
J.P. MORGAN-CHASE BANK N.A.,        )
d/b/a CHASE,                        )
                                    )
        Defendant.                   )

# MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant JPMorgan Chase Bank, N.A., ("Chase")[1] to dismiss the claims of the plaintiffs John Stouffer and Nancy Stouffer (collectively, "the Stouffers") (docket entry 15).

## I. BACKGROUND

On June 17, 1993, the Stouffers acquired title to the residential property that is the subject of this suit, 3405 Pebble Beach, Farmers Branch, Texas ("the

---

[1] The plaintiffs incorrectly named JPMorgan Chase Bank, N.A., as J.P. Morgan-Chase Bank, N.A. d/b/a Chase. Defendant's Motion to Dismiss at 1 (docket entry 15).

homestead property"). Plaintiff's [sic] Original Complaint ("Complaint") ¶ 8 (docket entry 1).

In 2008, the Stouffers obtained a $200,000 home equity loan from Chase that was secured by a homestead lien contract and deed of trust encumbering the homestead property. Defendant's Brief in Support of its Motion to Dismiss ("Motion") at 3 (docket entry 16); *see also* Homestead Lien Contract and Deed of Trust ("Lien Contract and Deed"), *attached to* Complaint as Exhibit A.

On August 20, 2013, the Stouffers filed a petition under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.[2] Motion at 3; Complaint ¶ 11. In accordance with a compromise settlement, the Stouffers returned approximately $260,000 to the Chapter 7 Trustee ("Trustee"). Complaint ¶ 12.

In the bankruptcy, a secured claim was scheduled as owed to Chase in the amount of $195,550, secured by the homestead property. Motion at 3; Appendix in Support of Defendant's Motion to Dismiss ("Appendix") at APP. 003 (docket entry 17). However, the Trustee abandoned claims to the homestead property; thus, no claim was administered as to Chase's secured claim. Motion at 3; Defendant's Reply in Support of its Motion to Dismiss ("Reply") at 2 (docket entry 24); *see also* Appendix at APP. 010; Complaint ¶ 15.

---

[2] Case No. 3:13-34242 HDH.

Unsecured claims also were scheduled as to Chase in the amount of $50,824.68 for an unsecured debt evidenced by a line of credit originated by Washington Mutual Bank in 2000 ("the 2000 line of credit") and $100,914 for an unsecured debt evidenced by a line of credit originated by Bank One in 1997 ("the 1997 line of credit"), with the characterization of these debts as "business debts." Motion at 3; Reply at 1; Appendix at APP. 008, 033. With regard to these loans, Chase filed claims for $49,808.13 for the 2000 line of credit and $99,518.47 for the 1997 line of credit and was paid $11,380.79 and $22,739.23 respectively. Motion at 3; Reply at 1; Appendix at APP. 008; Supplemental Appendix in Support of Defendant's Motion to Dismiss at APP. 044-051, 052-058 (docket entry 25). Chase contends that the $11,380.79 and $22,739.23 payments it received in the 2013 bankruptcy "were scheduled separate and apart from the home equity loan in question." Motion at 1; *see also* Reply at 2.

On or about May 24, 2017, the Stouffers demanded in writing that Chase release its lien and clear the title on the homestead property. Complaint ¶ 17. The Stouffers argued that lien was invalid because Chase had "pursued personal liability" against them, and that receipt of the $11,380.79 and $22,739.23 payments in the 2013 bankruptcy violated a state constitutional provision that home equity loans be made without recourse to the borrowers. *Id*. ¶¶ 13, 14, 16, 17. Chase has refused to release its lien upon the homestead property. *Id*. ¶ 17.

On March 13, 2018, the Stouffers filed this suit against Chase seeking a declaratory judgment, exemplary damages, attorney's fees, and to quiet title.[3] See generally *id*. The Stouffers seek a declaration that the deed of trust has "no force and effect" and an order to "remove the cloud case on Plaintiffs [sic] title by the deed of trust/contract. . . ." *Id*. at 6. Chase moves to dismiss the Stouffers' claims against it pursuant to FED. R. CIV. P. 12(b)(6). *See generally* Motion.

## II. ANALYSIS

### A. Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

---

[3] The Stouffers acknowledge their complaint lacks adequate bases for awards of exemplary damages and attorney's fees. *See generally* Plaintiff's [sic] Response to Defendant's Motion to Dismiss Rule 12 b 6 (docket entry 21).

- 4 -

the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 678. The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The

court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id*. at 679, 683.

B.  Application

1.  *Constitutional Claim*

In Texas, the homestead is protected by statute and the Texas Constitution, *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016), and no unsecured debt may result from a home equity loan, *In re Pfeil*, No. 07-51241-C, 2007 WL 2034295, at *2 (Bankr. W.D. Tex. July 10, 2007).  The Stouffers contend that the lien on the homestead property violates a Texas constitutional requirement that a home equity loan be nonrecourse as to the borrowers.  Complaint ¶ 16. Specifically, they assert that "Section 50 (a)(b) of Article XVI, of the Texas Constitution prohibits recourse or personal liability with respect to any loans taken pursuant to the authority of Section 50 (a)(b) of Article XVI of the Texas Constitution [and b]y collecting the sums . . . in the bankruptcy proceeding, Chase pursued individual and personal liability against John and Nancy Stouffer." *Id*.

The Texas Constitution protects the homestead of a family or person from forced sale except to pay debts for an extension of credit that "is without recourse for personal liability against each owner and the spouse of each owner, unless the owner

or spouse obtained the extension of credit by actual fraud . . . ." TEX. CONST. art. 16, § 50(a)(6)(C) ("§ 50(a)(6)(C)"). Where a lender has included the necessary terms and conditions at origination, a loan complies with the Texas Constitution. *Garofolo*, 497 S.W.3d at 478.

Chase contends that the lien and deed of trust on the homestead property complied with the Texas Constitution at origination by specifying that the loan secured by the deed of trust was nonrecourse. Motion at 5-6; Reply at 3-4. The homestead lien contract and deed of trust included the following provision.

> LIMITATION ON PERSONAL LIABILITY. The provisions of this Homestead Lien Contract are subject to the limitations on personal liability found in the Texas Constitution. This means that unless the indebtedness is obtained by actual fraud, no signatory of this Homestead Lien Contract or the spouse of any signatory is personally liable for the payment of any sums required by the terms of this Homestead Lien Contract or the performance of any of its terms. In the event of default under the provisions of this Homestead Lien Contract, the remedy of Lender in the absence of actual fraud is to enforce its rights solely against the Property and not personally against any owner of the Property or the spouse of any owner of the Property. If the extension of credit is obtained by actual fraud, the signers of this Homestead Lien Contract may be personally liable for the payment of the sums due under it or performance of its terms. This means the Lender could obtain a judgment against the signers requiring them to pay the difference between the amount the Property is sold for at foreclosure and the outstanding, unpaid amount of the indebtedness.

Lien Contract and Deed at 4.

The inclusion of this provision at the origination of the home equity loan satisfies the Texas constitutional requirement that a home equity lien secure a nonrecourse obligation of a borrower; thus, the lien is constitutional and valid under Texas law. Furthermore, in the 2013 bankruptcy, Chase only received the $11,380.79 and $22,739.23 payments in conjunction with unsecured claims or business debts, not payment on the 2008 home equity loan.

In addition, § 50(a)(6)(C) only protects against forced sale; it provides no other constitutional recourse for a violation. *Garofolo*, 497 S.W.3d at 478-79; see also *id*. at 479 ("[T]here is no constitutional violation or remedy for failure to deliver a release of lien. Section 50(a) simply has no applicability outside foreclosure."); *Wood v. HSBC Bank USA, National Association*, 505 S.W.3d 542, 546 (Tex. 2016); see also *Johnson v. Citigroup Mortgage Loan Trust Inc.*, No. 5:16-CV-1114-RCL, 2017 WL 3337268, at *9 (W.D. Tex. Aug. 3, 2017) ("[A] plaintiff does not state a claim merely by alleging constitutional violations of section 50(a)."). While Chase's actions may give rise to other causes of action, they do not give rise a constitutional claim. See *Garofolo*, 497 S.W.3d at 479. As a matter of law, the Stouffers have not alleged a cognizable cause of action under the Texas Constitution. Therefore, the Stouffers' claim that their home equity loan violated the Texas Constitution must be dismissed.

## 2. *Quiet Title Claim*

To recover on a quiet title claim in Texas, the plaintiffs must show (1) an interest in a specific property, (2) that title to the property is affected by the defendant's claim, and (3) that the claim is invalid or unenforceable. *Warren v. Bank of America, National Association*, 566 Fed. App'x. 379, 382 (5th Cir.) (per curiam), *cert. denied*, __ U.S. __, 135 S. Ct. 197 (2014); *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.--El Paso 2012, pet. denied). A cloud of title occurs where an outstanding claim or encumbrance, if valid, would affect the title of the property owner. *Vernon*, 390 S.W.3d at 61. Where plaintiffs prove a right to ownership and that the defendant's adverse claim is a cloud on the title, the effect of a suit to quiet title is to declare the defendants' claim to title invalid or ineffective. *Id.* A suit to quiet title is an equitable remedy, and "[n]o Texas case has ever awarded damages . . . ." *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983); see also *Vernon*, 390 S.W.3d at 61.

In *Warren*, 566 Fed. App'x. 379, the Fifth Circuit, applying Texas law, affirmed the decision to grant a motion to dismiss the plaintiff's quiet title claim where he did not demonstrate his own superior claim to title. *Id.* at 382-83. The plaintiff merely alleged a "conclusory" interest in the title that was "unsupported by specific factual allegations." *Id.* at 382. Instead of providing proof that he was current on his mortgage payments, the plaintiff "impermissibly relied on the weakness of [the defendant's] title" to prove his claim. *Id.* The court reasoned that

the plaintiff failed to state a claim upon which relief may be granted because the pleadings merely stated that the defendant claimed to own a loan at the plaintiff's address, and the plaintiff failed to establish his own superior right to the property. *Id.* at 383.

Similarly, in another case, the Northern District of Texas concluded that a plaintiff failed to allege facts sufficient to prove superior title to property where she merely alleged that "she is in possession of the deed of trust" and that the defendant's deed is "clouding her rightfully and properly-owned title." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 767 (N.D. Tex. 2012) (Lynn, J.) (accepting findings, conclusions, and recommendation of Ramirez, Mag. J). The court reasoned that the plaintiff failed to demonstrate how her possession gave her superior title and that the "vague and conclusory allegations" were insufficient. *Id.;* see also *Ventura v. Wells Fargo Bank, National Association*, No. 4:17-CV-075-A, 2017 WL 1194370, at *2-*3 (N.D. Tex. March 30, 2017) (McBryde, J.).

Likewise, in the present case, the Stouffers make only conclusory statements that they "acquired title to the property which is the subject of this controversy" and that "[s]uch property is the residential homestead of Plaintiffs John W. and Nancy I. Stouffer." Complaint ¶ 8. The pleadings further allege the home equity lien "is voidable and should be cancelled by the court . . . [and] the maintenance of the Deed of Trust lien for record has created a cloud on Plaintiff's [sic] title to the property

that should be removed by the court." *Id*. ¶ 18. These conclusory statements do not establish facts sufficient to support the Stouffers' claim to quiet title. See *Warren*, 566 Fed. App'x. at 383; *Hurd*, 880 F. Supp. 2d at 767. Accordingly, the court concludes that dismissal of the Stouffers' quiet title claim is appropriate.

### III. CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED**.

The Stouffers' claim pursuant to the Texas Constitution is **DISMISSED** with prejudice.

The Stouffers' claim to quiet title is **DISMISSED** without prejudice. The plaintiffs shall have leave to amend their complaint to cure the deficiencies described above -- if they can -- provided that the plaintiffs' amended complaint is filed and served no later than **December 26, 2018**. If no such amended complaint is filed and served, this claim will be deemed dismissed without further notice. If the plaintiffs duly amend their complaint, the defendant may reassert its motion to dismiss if it believes that the amended complaint fails to cure the defects in the original complaint noted above.

**SO ORDERED.**

December 12, 2018.

_____
**A. JOE FISH**
**Senior United States District Judge**